**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | |
|---|---|
| **CANAL INSURANCE COMPANY,**      ) | |
|        ) | |
|     **Plaintiff,**      ) | |
|        ) | |
| **v.**      ) | **No. 3:12-CV-178** |
|        ) | **(Phillips)** |
| **XMEX TRANSPORT, LLC, et al.,**      ) | |
|        ) | |
|     **Defendants.**      ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff has filed this declaratory judgment action, seeking a declaratory judgment relating to a policy of insurance issued to defendant XMEX Transport, LLC. Defendants have moved to dismiss plaintiff's complaint for declaratory judgment pursuant to 28 U.S.C. § 2201(a) or, in the alternative, to transfer the case to the United States District Court for the Western District of Texas in El Paso, Texas, pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court declines to entertain plaintiff's request for declaratory relief pursuant to 28 U.S.C. § 2201. The court concludes that the question whether a contractual duty to defend and indemnify arises under the contract of insurance is properly resolved in the context of the case-specific facts of the underlying tort cases. In addition, the court concludes that a transfer of venue would not be appropriate in the circumstances of this case.

## I. Background

Plaintiff Canal Insurance Company is a South Carolina corporation, with its principal place of business located in Greenville, South Carolina. Defendant XMEX Transport , LLC, is a Tennessee limited liability company with a principal place of business in Knoxville, Tennessee. Defendant Charles Strader is a citizen and resident of Tennessee. Plaintiff avers that this court has jurisdiction to hear its complaint for declaratory judgment based upon the grounds of diversity of citizenship of the parties and the amount in controversy, pursuant to 28 U.S.C. § 1332. Plaintiff further avers that this court is the proper venue of this action pursuant to 28 U.S.C. § 1391 because it is the district in which a substantial part of the events giving rise to the claim occurred. In its complaint for declaratory judgment, plaintiff has sued sixteen defendants. The record shows that eleven defendants have been served with summonses. Five defendants have not been served with process. Only two of the sixteen defendants, XMEX Transport and Charles Strader, have their residence or principal place of business in the State of Tennessee. Ten of the sixteen defendants are residents of Texas, or have their principal place of business located in Texas. Three of the defendants are residents of Mexico, or have their principal place of business located in Mexico.

The facts which give rise to plaintiff's complaint for declaratory judgment arise out of a motor vehicle accident on August 17, 2010, in Mitchell County, Texas, involving a single vehicle, a 2007 International tractor truck owned, maintained, and serviced by Moore Freight Services, XMEX Transport, and/or Chip Strader. Roger Franceware and Lorenzo Munoz were occupants of the tractor truck and suffered fatal injuries in the

accident. Several lawsuits have been filed in the District Court of El Paso County, Texas, 168th Judicial District, arising out of the August 17, 2010 accident, which have been consolidated for trial. The Texas lawsuits filed by the heirs of Munoz and Franceware allege personal injury and wrongful death due to negligence and gross negligence of defendants, including XMEX and Strader. Franceware and Munoz are alleged to have been employed by XMEX/Strader. One of the Texas lawsuits alleges that Munoz was employed by Moore Freight Services, A-Z Trailers, XMEX and/or Chip Strader, who are liable under the theories of respondeat superior as well as negligent hiring and retention, negligent supervision and training, and negligent entrustment.

Plaintiff issued a commercial automobile policy to defendant XMEX on August 6, 2010. Plaintiff asserts that the 2007 International truck involved in the August 17, 2010 accident was not owned by XMEX and was not described in the XMEX policy or declarations. Therefore, plaintiff asserts coverage is not afforded under the XMEX policy for the allegations of the Texas lawsuits, and no duty to defend or indemnify is owed to defendants in the Texas lawsuits. Plaintiff Canal Insurance states it is not a named party in the Texas lawsuits, and the issue of whether plaintiff has a duty to defend or indemnify defendants XMEX and/or Strader is not currently before the Texas court.

Plaintiff contends that, based upon various provisions in its policy of insurance, no duty to defend or indemnify is owed to defendants in the Texas lawsuits. The XMEX policy contains several exclusions: (1) an exclusion for "bodily injury" to an employee of the insured arising out of and in the course of employment by the insured or performing

3

the duties related to the conduct of the insured's business; (2) a fellow employee exclusion which excludes coverage for bodily injury to "any fellow employee of the insured arising out of and in the course of the fellow employee's employment or while performing duties related to the conduct of your business;" and (3) the Occupant Hazard Exclusion "excluding bodily injury sustained by any person while in or upon, entering or alighting from the auto." Plaintiff Canal avers that because the plaintiffs in the Texas lawsuits allege that Franceware and Munoz were employed by XMEX and/or were occupants of the vehicle, coverage is not afforded under the XMEX policy for the deaths of Franceware and Munoz.

The XMEX policy defines an "insured" under the policy as the named insured and under most circumstances, "anyone else while using with your permission a covered auto you own, hire or borrow." Plaintiff contends that neither Franceware, Strader, nor Munoz is a named insured or was using a "covered auto"; therefore, coverage is not afforded under the XMEX policy.

Plaintiff states that the operative facts regarding the negotiation and execution of the insurance policy is centered in Knoxville, Tennessee, where plaintiff and defendant XMEX negotiated the policy at issue. Also, plaintiff avers Tennessee law applies to this action, and this court is more familiar with applying Tennessee law to determine insurance coverage than the Texas courts, thus, venue is proper in the Eastern District of Tennessee.

Defendants argue that this court should exercise its discretion to decline to entertain plaintiff's complaint for declaratory judgment and to enter an order dismissing the

4

action.  In support of their argument, defendants' motions to dismiss set out numerous factual issues which are contested by the parties and which defendants state will have to be investigated through the discovery process and adjudicated in the Texas courts, including, but not limit to the following:

(1) by whom was Roger Franceware employed on August 17, 2010;

(2) by whom was Lorenzo Munoz employed on August 17, 2010;

(3) was Roger Franceware acting on his own business or on the business of some other person or entity on August 17, 2010;

(4)  was Lorenzo Munoz acting on his own business or on the business of some other person or entity on August 17, 2010;

(5) where had the trip that Munoz and Franceware were on, using the 2007 International truck owned by Moore Freight Services, Inc. originated;

(6) what was the destination of Munoz and Franceware on August 17, 2010; and

(7) how had Franceware and Munoz come into the possession of the trailer which was attached to the 2007 International truck owned by Moore Freight Services, on August 17, 2010.

## II.  Declaratory Judgment Act

District courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995).  In a case of actual controversy within its jurisdiction, "any court of the

United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

The Declaratory Judgment Act is an enabling Act, "which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287. Ultimately, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.*

The Sixth Circuit Court of Appeals has recognized two principal criteria favoring declaratory relief: "(1) when judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984). If neither of these results can be accomplished, the court should decline the request for relief. *Id.*

Five factors are to be considered in deciding whether to exercise jurisdiction: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy

that is better or more effective.  *Id.; see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

The first factor the court must consider is whether the judgment would settle the controversy.  Given the factual circumstances presented, it is questionable whether a judgment would settle the controversy.  As pointed out by defendants, a number of circumstances may affect the liability attributable to defendants, *i.e.,* (1) by whom was Roger Franceware employed on August 17, 2010; (2) by whom was Lorenzo Munoz employed on August 17, 2010; (3) was Roger Franceware acting on his own business or on the business of some other person or entity on August 17, 2010; (4)  was Lorenzo Munoz acting on his own business or on the business of some other person or entity on August 17, 2010; (5) where had the trip that Munoz and Franceware were on, using the 2007 International truck owned by Moore Freight Services, Inc. originated; (6) what was the destination of Munoz and Franceware on August 17, 2010; and (7) how had Franceware and Munoz come into the possession of the trailer which was attached to the 2007 International truck owned by Moore Freight Services, on August 17, 2010.  Since the duty to defend may rest on different legal, and even factual, considerations from the question of indemnity, it is conceivable that any declaratory relief granted would be of limited effect in conclusively resolving the controversy presented.

The second factor the court must consider is whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue. While the declaratory judgment action may serve to clarify the legal relations at issue, this

matter can also be efficiently resolved in the underlying Texas court action, where discovery and facts are before that court to fully consider the issues of the duty to defend and indemnify the claims alleged against XMEX and/or Strader. Unlike some cases involving questions of the duty to defend and indemnify, this case involves no single generally dispositive issue. It is not clear that this action would properly "resolve, once and finally," the question of indemnity between Canal and its insured, and to the contrary, may confuse the issues of liability in the Texas court proceedings. Thus, this factor does not weigh in favor of granting declaratory relief.

The third factor the court considers is whether the declaratory remedy is being used merely for the purposes of "procedural fencing" or "to provide an arena for a race for res judicata." There is no evidence of an improper motive in plaintiff's filing of the declaratory judgment action in the Eastern District of Tennessee. While it is apparent that the parties may stand to gain procedural advantage from their respective positions on the proper forum, on balance, this factor does not weigh heavily for or against plaintiff's request for declaratory relief by this court.

The fourth factor the court considers is whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction. The Sixth Circuit has set out three subfactors to be considered when determining whether the action will increase friction between federal and state courts: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate

those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and common or statutory law that dictates a resolution of the declaratory judgment action. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

In this case, all three subfactors support resolution in the state court of the parties' dispute of the duty to defend and indemnify. There is no assertion that federal law is in any way implicated in this case. To the contrary, the legal issues related to both the insurance contract and liability rest wholly on state law. Moreover, the court is persuaded that the underlying factual issues in the Texas lawsuits are important to an informed resolution of the case and that there is a close nexus between the underlying factual and legal issues and state law. As noted above, the question of the duty to defend and indemnify may hinge to a large extent on a determination of ownership of the vehicle involved in the accident, and the relationship of the deceased to any defendants. Contrary to plaintiff's assertions, these issues are unlikely to be resolved based solely on the language within the four corners of the insurance contract.

In addition, any attempt to resolve the issues by this court would likely encroach on state court jurisdiction, particularly given the intertwined duty to defend, indemnify, and liability issues. The legal and factual resolution of these issues may vary from state to state, and case to case. Any resolution of underlying factual issues by this court could ultimately conflict with determinations by the Texas court. Where a federal court is required to make factual findings that may conflict with similar findings of the state

court, the exercise of jurisdiction is inappropriate.  *Flowers*, 513 F.3d at 560.  Given the number of variables that may influence the resolution of the duty to defend and indemnify, the court concludes that this factor weighs strongly against any exercise of jurisdiction by the federal court.

The fifth factor for the court's consideration is whether there is an alternative remedy that is better or more effective.  To the extent that defendant's motion to transfer venue to the United States District Court for the Western District of Texas in El Paso, Texas is an available alternative remedy, the court concludes that a mere transfer of venue would not be appropriate in the circumstances of this case.  As noted above, the parties' dispute involves only matters of state law, and in the court's view, declining federal jurisdiction is preferable.  The parties have an available alternative remedy of having their dispute resolved in the underlying state court litigation.

In light of the numerous underlying factual and legal issues important to an informed resolution of plaintiff's declaratory judgment action, the court finds that the Texas state trial court is in a better position to evaluate those issues.  There will likely be considerable overlap between the factual and legal issues concerning plaintiff's duty to defend and indemnify and the state court claims.  In order to decide the issues presented by plaintiff's complaint for declaratory judgment, this court would be required to re-litigate, at additional expense to the parties, those issues which are currently in litigation in the Texas state court, and in which substantial discovery has been conducted in the Texas cases.  The pleadings establish that the majority of witnesses in the consolidated Texas

cases reside in Texas or Mexico, which poses a real and substantial inconvenience and unnecessary expense to defendants, as well as the other parties in the Texas litigation. The legal and factual resolution of issues before the Texas court could potentially conflict with determinations made by this court. Having considered all the factors, the court declines to entertain plaintiff's declaratory judgment action pursuant to the court's authority as provided in 28 U.S.C. § 2201(a).

### III.  The Court Lacks Personal Jurisdiction Over the Munoz and Franceware Heirs

Plaintiff's complaint alleges federal jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship. Plaintiff is a South Carolina corporation, with its principal place of business located in Greenville, South Carolina. Defendant XMEX Transport, LLC, is a Tennessee liability company with a principal place of business in Knoxville, Tennessee. Defendant Charles Strader is a citizen and resident of Tennessee. Plaintiff has filed this declaratory judgment action pursuant to 28 U.S.C. § 2201. The heirs of Lorenzo Munoz and Roger Franceware, who reside in Texas, have moved to dismiss plaintiff's complaint for lack of personal jurisdiction, under FRCP 12(b)(2).

A motion to dismiss pursuant to FRCP 12(b)(2) requires the court to determine whether the plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction over the defendants. In ruling upon a Rule 12(b)(2) motion, the court has three procedural alternatives: (1) the court may determine the motion on the basis of written submissions and affidavits alone; (2) it may permit discovery in aid of the motion; or (3) it may conduct an evidentiary hearing on the merits of the motion. *See Serras v. First*

*Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989). In this case, the court will decide the matter based upon the briefs, affidavits, and other evidence submitted by the parties.

The plaintiff always bears the burden of establishing personal jurisdiction, but the weight of that burden depends upon the manner in which the court elects to proceed. *Id.* Where, as here, the court elects to rule without an evidentiary hearing, the plaintiff's burden is lightened considerably. In such a case, the plaintiff need only present a *prima facie* case for jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub..,* 327 F.3d 472, 478 (6th Cir. 2003); *Kerry Steel v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 792 (6th Cir. 1996). As with a Rule 12(b)(6) motion, the court should consider the pleadings and affidavits in the light most favorable to the plaintiff, however,"the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise, ... specific facts showing that the court has jurisdiction.'" *Serras,* 875 F.2d at 1214 (quoting *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir. 1974)); *see also Nationwide,* 91 F.3d at 792. Thus, as long as the plaintiff is able to "demonstrate facts which support a finding of jurisdiction," the motion to dismiss should be denied, even in the face of controverting evidence presented by the moving party. *Serras,* 875 F.2d at 1214; *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988).

When determining whether there is personal jurisdiction over a defendant, a federal court must apply the law of the state in which it sits, subject to constitutional

limitations. *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 110, 1115 (6th Cir. 1994).

Tennessee law provides as follows:

> Persons who are nonresidents of Tennessee ... are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) the transaction of any business within the state ... (4) entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting; (5) entering into a contract for services to be rendered or for materials to be furnished in this state; (6) any basis not inconsistent with the constitution of this state or of the United States...

Tenn. Code Ann. § 20-2-214. Where, as is the case with Tennessee, a state's long-arm statute reaches as far as the limits of the United States Constitution, the court "need only determine whether the assertion of personal jurisdiction ... violates constitutional due process." *Nationwide,* 91 F.3d at 793. "Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1940); *Bird v. Parsons,* 289 F.3d 865, 871–72 (6th Cir. 2002). Personal jurisdiction over a non-resident defendant may be asserted under either general or specific theories of jurisdiction. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir. 1992).

General jurisdiction exists when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147,

149 (6th Cir. 1997).  Plaintiff does not allege that the Munoz and Franceware heirs had continuous and systematic contacts with Tennessee, so general jurisdiction cannot be established.

In the absence of general jurisdiction resulting from continuous and systematic contacts with the forum state, specific personal jurisdiction still may be found when a defendant purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985); *J.I. Case Corp v. Williams,* 832 S.W.2d 530, 532 (Tenn. 1992).  In such a case, "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

The Sixth Circuit utilizes a three-part test to determine whether personal jurisdiction would violate the requirements of the due process clause.  First, the defendant must purposely avail himself of the privilege of acting in the foreign state or causing a consequence in the foreign state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the foreign state to make the exercise of jurisdiction over the defendant reasonable.  *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir. 1968).

Based on the requirements outlined above, the court finds that it does not have specific jurisdiction over the Munoz and Franceware heirs because these defendants did not purposefully direct their activities to Tennessee and plaintiff's cause of action did not arise from or relate to any contacts with Tennessee. Rather, plaintiff's cause of action arose when Roger Franceware and Lorenzo Munoz died in a tractor-trailer accident on August 17, 2010, in Mitchell County, Texas. The Munoz and Franceware heirs brought suit in El Paso County, Texas against XMEX and Charles Strader, among others. Plaintiff has not shown that the Munoz and Franceware heirs had any continuous or systematic contacts with the State of Tennessee, which would allow this court to exercise personal jurisdiction over them.

Moreover, the court finds that assumption of jurisdiction over the Munoz and Franceware heirs would offend traditional notions of fair play and substantial justice and would be inconsistent with the constitutional requirements of due process. Litigating this matter in the Eastern District of Tennessee would place an extraordinary burden on defendants. The Munoz and Franceware heirs would be required to hire counsel to represent them in the Eastern District of Tennessee, and to participate in the defense of the suit in Tennessee. Practical considerations make the trial of this case more efficient and less expensive in El Paso, Texas. Access to sources of proof will be easier in El Paso, Texas. Compulsory process for attendance of witnesses is available in El Paso, Texas. The cost of obtaining the presence of witnesses will be lower in Texas, where many of the witnesses reside. Finally, the court finds that litigating the case in this court could create unnecessary problems in conflicts of law with the Texas court. Because the Texas court

has jurisdiction to hear plaintiff's suit and is a more appropriate forum to resolve the dispute, defendants' motions to dismiss for lack of personal jurisdiction will be granted.

Accordingly, defendants' motions to dismiss [Docs. 26, 28, 30, 53, 60] are **GRANTED;** defendant Jose Gomez's motion to set aside entry of default [Doc. 50] is **GRANTED**; and this action is **DISMISSED.**

Defendants' motions to transfer venue pursuant to 28 U.S.C. § 1404(a) are **DENIED.**

Any remaining motions are **DENIED as moot.**

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge